UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MICHAEL I. JOHNSON,
              Plaintiff,  :   10 Civ. 8545 (ALC)

   -against- :   **OPINION AND ORDER**

JANET NAPOLITANO,
SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,

              Defendant.

------------------------------------------------------------X

**ANDREW L. CARTER, United States District Judge:**

    Defendant Janet Napolitano, Secretary of the Department of Homeland Security ("Defendant") brings this motion for summary judgment against Plaintiff Michael Johnson ("Plaintiff" or "Johnson"), who alleges discrimination on the basis of race, color and gender under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and on the basis of age pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff also claims retaliation in violation of Title VII and the First Amendment to the Constitution of the United States. His claims of discrimination and retaliation stem from an unsuccessful application for a promotion. Because Johnson does not allege a prima facie case of discrimination or retaliation, Defendant's motion for summary judgment is granted.

BACKGROUND

    In 2008, Johnson, an African-American male, then 57 years old, applied for a position as Entry Specialist for the Department of Homeland Security ("DHS"). He was not selected. Instead, Susan Mitchell, Director of Field Operations, New York, the selecting official, selected

1

eight other candidates: Michelle D'Angelo, a white[1] female, age 49; Irene Lewis, a black female age 59; Diane Moo-Liu, an Asian-American, female, age 44; Ernst Grand Pierre, a black male of lighter-skin tone, age 34; Janet Rocheny, a white female, age 52, Carol Hennings, a white female age 46; Josefina German, a Hispanic female age 58, and Xandra Legrou, a white female age 39. (Rule 56.1 Stmt ¶ 14). Johnson challenges the selection as evidence of discrimination based on race, gender, color and age and retaliation.

Johnson's Previous Employment

Prior to his employment at DHS, Plaintiff served in the Army from 1972 to 1974, and received an honorable discharge. Johnson also obtained an Associate's Degree from New York City Technical College in 1976. Before working for DHS, Plaintiff worked at the Veterans Administration as a management assistant.

In 1987, Plaintiff was hired as a Customs Aid, a GS-6 level position, in the Trade Operations Branch with the United States Customs Service, a predecessor to DHS. (*Id.* ¶ 3). In or about 1992, Johnson applied to and was promoted to the GS-7 level. Between the mid-1990s and 2005, Johnson went from Lead Custom Aid to Customs Technician.[2] In 2005, Johnson moved to his current position, CBP Technician, in the Trade Operations Branch, Entry Division. Johnson remains at the GS-7 level.

---

[1] The EEO specialist who prepared the list of candidates identifying their sex, race and age mistakenly identified Ms. D'Angelo's race as Black. Ramirez-Fisher Decl. Ex. 5 (Gov. 361). She is White. *See id.* Ex. 6 (D'Angelo Tr. 5).

[2] There is some discrepancy about the start dates for Johnson's new positions. His resume and EEO complaint state, for instance, that he was a GS-6 until 1996, as opposed to 1992 as he states in his deposition. Additionally, they all reflect interim title positions between Plaintiff's start with the Customs Service, namely Lead Customs Aid and Customs Technician, and his current role as CBP Technician. (Ramirez-Fisher Decl. Ex. 8 (Gov. 366-369); Supp. Ramirez-Fischer Decl. Ex. 22 (Gov. 245).

At the time of the selections, six of the selectees—Ms. D'Angelo, Ms. Lewis, Ms. Moo-Liu, Mr. Grand Pierre, Ms. Rocheny, Ms. Hennings—were GS-7 CBP Technicians, like Plaintiff. Ms. German was a GS-9 Staff Assistant, and had previously been a GS-7 Customs Technician. Ms. Legrou was a GS-11 CBP Officer. (Rule 56.1 Stmt ¶ 16).

As a Customs Technician in the Entry Division, Plaintiff has certain duties with respect to quota entries and selectivity. Ramirez-Fisher Decl. Ex. 2 (Johnson Tr. 10). Entries are the manila folders which contain paperwork necessary for the importation of commodities into the United States. *Id.* (Johnson Tr. 11). Quota entries are those entries in which only certain amounts of the commodity is permitted into the United States. *Id.* (Johnson Tr. 11-12). Selectivity refers to entries of commodities that are subject to inspection. *Id.* (Johnson Tr. 13).

As a Customs Technician, Plaintiff analyzes the entries to ensure that they are complete and correct under the relevant rules and regulations, *id.* (Johnson Tr. 10-11), and he inputs the entries into the customs system, known as the Automated Customs System ("ACS"), *id.* (Johnson Tr. 12, 14). He may contact brokers when an entry is incorrect. *Id.* (Johnson Tr. 15). In addition, he routes the entries to the Import Specialists and/or the Customs Commodity Team. *Id.* (Johnson Tr. 15).

At the time of the selection, Dianna Davis had been Plaintiff's first-line supervisor since approximately 2005. *Id.* (Johnson Tr. 16, 17). Joy Brachman, Branch Chief at the New York/Newark Port, was Plaintiff's second-line supervisor until she retired in or about January 2012. *Id.* (Johnson Tr. 18). Larry Lewis, the Assistant Area Director of the Port of New York/Newark, was Plaintiff's third-line supervisor. *Id.* (Johnson Tr. 18).

Eligibility

The candidates who meet the basic eligibility requirements and are determined to be best the qualified are referred for selection consideration. (Rule 56.1 Stmt ¶ 20). The "[s]electing official may choose any applicant referred on the best-qualified list." *Id.* The use of interviews in connection with the filling of vacancies is entirely optional, at the discretion of the selecting official or his/her designee. *Id.*

On January 7, 2008, CBP issued Vacancy Announcement MHCMP-165926-NMC for the position of Entry Specialist, GS-1894-07/11. Ramirez-Fisher Decl. Ex. 3 (Gov. 306-313). Plaintiff applied under the Vacancy Announcement. *Id.* Ex. 2 (Johnson Tr. 55). Plaintiff was certified as eligible at the GS-9 level, and his name along with other GS-9 eligible candidates were listed on the GS-Competitive list of eligibles. *Id.* Ex. 4 (Gov. 341-345).

Michael Choma, a Program Analyst, at the New York/Newark Port asked the immediate supervisor of each eligible candidate to complete a reference check form. *Id.* Ex. 9 (Choma Tr. 81). He also sent a questionnaire to the eligible candidates asking each about relatives who worked in CBP and conflicts of interests. *Id.* (Choma Tr. 21, 25).

Using information from the resumes of eligible candidates and their conflicts check questionnaire, Choma then prepared a matrix, listing each candidate with his or her grade level, and other characteristics, including postsecondary education, awards/letters for the last 10 years, entry on duty date with CPB/USCS, entry on duty date in current position, and variety of assignments. *Id.* (Choma Tr. 17, 21); *see also id.* Ex. 10 (Gov. 1370-1374).

He then forwarded the application package which now consisted of the resumes, the matrix, and reference checks forms to officials responsible for making the selections and recommendation. *Id.* (Choma Tr. 32); *id.* Ex. 11 (Gov. 1301, 1326-1327, 1330-1331, 1333, 1335, 1337, 1340-1341, 1344, 1347, 1350).

Johnson's Reference Check

Dianna Davis (Black Female, age 48), Plaintiff's first level supervisor, completed the supervisory reference check in connection with his application for the position at issue. (Rule 56.1 Stmt ¶ 28; see Ramirez-Fisher Decl. Ex.11 (Gov. 1301) (Plaintiff's reference check)). Davis was asked to rate several areas of performance on a scale of 1 to 5, with 1 indicating exceptional, 2 indicating above average, 3 indicating average, 4 indicating below average, and 5 indicating an inability to evaluate. Ramirez-Fisher Ex. 11 (Gov. 1301).

Ms. Davis rated Plaintiff's performance a "3" in four areas of evaluation: average performance during the past two years; willingness to make decisions; ability to work independently; and initiative and motivation. *Id.* She rated his performance a "2" in the areas of punctuality and reliability and ability to work with others.

According, to Ms. Davis, Johnson's strength was that he was able to work well with others, took criticism, and learned from his mistakes. *Id.* A negative aspect or weakness in his job performance was that often times, he did not make decisions and sometimes he did not do work independently. *Id.* Ms. Davis recommended Plaintiff for the position, and in terms of additional comments, she stated that, "if he gets this position, he will just have to trust his instincts" because she believed that Plaintiff would be a good person for the job as long as he trusted himself. Ramirez-Fisher Decl. Ex. 12 (Davis. Tr. 80).

Selection Process

The selection process began with Assistant Port Director Larry Lewis, incidentally Plaintiff's third-level supervisor. Lewis advised Port Director Adele Fasano, the recommending official, about whom to recommend for selection. Ramirez-Fisher Decl. Ex. 15 (Lewis Tr. 30);